Proceed to the third case, Burton v. Board of Regents of the University of Wisconsin. Ms. Pennix. Good morning. May it please the Court. I am Attorney Kimberly Pennix, and I represent Plaintiff Appellant Dr. Sabina Burton in her appeal of an order of the U.S. District Court of the Western District of Wisconsin, which summarily dismissed her claims under Title VII of the Civil Rights Act and Title IX of the Education Amendments Act. At the District Court level, Dr. Burton alleged that the University of Wisconsin Blackville retaliated against her for her assertions of rights via complaints to the University, the EEOC, the Wisconsin ERD, and the Wisconsin ERD. In her appeal, she asserts the District Court failed to construe the facts in her favor in the summary judgment proceedings and asks this Court to vacate the order of dismissal and remand the case to allow her to bring it before a jury. Call me. Those two small words started the snowball that ultimately ruined Dr. Burton's career. Those were the words scrawled on a note that Professor Gibson slipped to a student in class. So before we get into that, there were certain protected activities that you now raise that weren't brought before the District Court. Why not? There are two categories of protected activities that we are raising on the appellate level that are alleged to not have been raised at the District Court level. One are those that were in the record but not directly argued in the summary judgment opposition. And then there's one protected activity that was argued in the summary judgment opposition, but it didn't get considered in the Court's order. And that would be the December 10, 2012 complaint about retaliation for the note incident that happened two months earlier. So the facts were in the record, just not pointed out to the District Court? Correct, as to all of them except the... That one? Yes. Okay, and are you asking the panel to consider the evidence filed with your motion for reconsideration? The only thing that Burton is asking the panel to do with regard to the evidence filed with the motion for reconsideration is to allow the evidence to show how reasonable people have construed the facts in her favor when given the same evidence that the District Court had before it when it considered the summary judgment proceedings. And do you think that's proper, given... Burton is not arguing that the Court should have considered the Grievance Committee findings, nor would they have been dispositive or binding. Instead, what she's doing is using them as an illustration how, when reasonable people see the same evidence, they might come to a conclusion in her favor that supports her arguments. May I further explain? Go ahead. So, for instance, the professor who slipped the note to the student claimed the pass was merely a teaching experiment. The Grievance Committee found this justification questionable, and the dean said it was profoundly serious to create an atmosphere of sexual harassment. But the District Court, looking at the same evidence, took the explanation of a teaching experiment as true. The Grievance Committee found the professor's apology email to be no apology at all, instead calling it a beyond-reprehensible version of slut-shaming. Of what? Of slut-shaming. That's what the Grievance Committee called it, saying basically that the student was being shamed by the professor's apology email. Meanwhile, the District Court looked at the same evidence... Meaning the student didn't get it. The Grievance Committee was saying that the forced apology was shaming the student. The student for not understanding this is an experiment as opposed to a direct solicitation for... Right, and the student said the apology made her look like an idiot. That was alleged directly in the summary judgment proceedings. Yet the District Court, looking at the same evidence, took the forced apology at face value. After receiving the note, the student had asked Dr. Burton for help. Dr. Burton correctly reported the note to the Dean of Students. The department chair took it personally that she didn't keep it at a departmental level, and the dean said the chair exacerbated the problem by publicly chastising Dr. Burton. Yet the District Court considered only that the chair created a new policy for handling student complaints. Two months later, Dr. Burton complained that the chair was retaliating against her, and that's that December 2012 complaint, by pulling support for her professional efforts towards a cybersecurity program. The Grievance Committee found it did look like the chair pulled the rug out from under Burton with regard to her cybersecurity initiative, and that it damaged her professional reputation. Yet the District Court, looking at the same evidence, found that Burton merely perceived hostility, disparagement, and a withdrawal of support. Dr. Burton complained because the administration did not follow proper procedure for selecting a chair. When faculty assignments were revisited, the new chair took away Burton's mentorship position without explanation. What's that? The mentorship position? That's when Dr. Burton had chaired a search committee, and one of the hires from that search committee was Dr. Valerie Stackman. And the arrangement was for Dr. Burton, as a senior faculty member, to mentor Dr. Stackman as a junior faculty member. And so she had been hired under the understanding that Dr. Burton would be her mentor, and she was, until the chair took it away. The chair gave no explanation for taking it away, despite Dr. Burton's protests. But then several months later, when it came down to the letter of direction, all of a sudden the administration was arguing, asserting that it was Burton's unprofessional relationship with the mentee. The human resources director had said Burton's relationship sounded professional and cordial, and the mentee herself testified in deposition that there were no issues with unprofessionalism and that she worked well with Burton. But the district court, looking at the same evidence, held the reprimand was well-founded. Months later, a graduate student told Dr. Burton he had hurt an administrator and a staff member, disparaging Burton. The student believes his position was then rescinded because of disallegiance, and despite funds being available. But the district court found he lost his position due to insufficient funds. Over the course of several years, when Burton saw her rights or university procedure being violated, she reported it and requested resolution. There is a copious record of reasonable people considering Burton's assertions from a neutral perspective and construing facts in her favor. Human resources personnel, the grievance committees, colleagues, the mentee. This record serves as a litmus test for what a jury could reasonably find. The district court disregarded this litmus test when it held that Burton could not, as a matter of law, convince reasonable people that she had suffered adverse actions as a result of opposing unlawful practices. What's the adverse action? I mean, this series of things you're describing that the district court found, well, this is sometimes unpleasant encounters, etc. But I guess an adverse action, that's why I asked about that. Mentorship, is that some sort of a position, something? It sounds to me that it was just an assignment for one person, and they removed it from that. It's not actually something that, a title that was taken away from her from some official position with the school. So there were a number of adverse actions that were alleged in the summary judgment proceedings and in her complaint. There were a bunch of little deprivations that over the course of two years added up to a material change in her professional experience, such as they took away favorable class assignments, the mentorship position, support for her cybersecurity initiative, which was devastating to Dr. Burton, although the district court dismissed that as having been important, the opportunity for her to serve on committees, the opportunity to be considered for the chair position, and even her right to have her grievances timely heard. They basically just stopped listening to her altogether. So this is sort of a cumulative situation, because in the meantime, she got tenure. She did get tenure. And that sort of, that would be the adverse action if she didn't get that because of all these things you recite. Well, individually and especially cumulatively, these amount to far more than inconveniences or mere incivility, as it's also been put. And ultimately, the university formally reprimanded Burton via a letter of direction and corresponding complaint, which the district court did consider to be adverse actions. And those are the only adverse actions it found in this case. The court accepted the letter of direction as sincere and explained the characterizations therein did not have to be correct, so long as there was some factual basis. The court took Burton's challenges to that letter as challenges to accuracy rather than challenges to motive. But the challenges demonstrate the disingenuousness behind the letter of direction. These are the bits and pieces from which a retaliatory animus can be drawn. The district court rejected this approach, saying that to question the motives behind the letter of direction based on unfairness or misconstruing facts would be to interfere with personnel decisions and employee management. Even if we took the strictest possible interpretation of the summary judgment arguments, there is still the protected activity in December of 2012 of Burton's complaining about retaliation from the note incident. And there is still the public chastising and withdrawal of support for her cybersecurity initiative the following month. Now, that letter of direction was actually dated eight days after Burton's filing of the charge with the EEOC. Is that right? I have to correct that. So, Burton filed her, she complained to the chancellor at the beginning of that month that her grievance was not being heard. Then on no response, so on October 20th, she filed her intake form with a long letter explaining what she was charging to the EEOC. The record is deficient in demonstrating that she also transferred a copy of that and told the school that she had filed that. So when the letter of direction was issued eight days later, although she would allege on remand, of course, that there is a causal connection and that deficiency would have to be corrected in the record. She didn't end up actually filing the charge until, I think it was not perfected until December, two months later. So she filled out the questionnaire October 20th, but the formal EEOC charge December 9th. Correct. And the questionnaire is not just the form. She attached all of her allegations as well. A reasonable jury would have ample evidence from which to conclude the administration did not sincerely believe that letter of direction was warranted. So then your position would be because those allegations were there, they were on notice. They were. I would like to see the record more complete on that point, though. I have to admit. A jury could conclude that the formal reprimand was prompted by the administration's desire to construct a case for Burton's termination due to her repeated complaints about discrimination and retaliation. Drawn in a light favorable to Burton and in the context of the myriad of other deprivations along the way, the breadth of the mischaracterizations and overstatements in the letter of direction support an inference of retaliatory intent. Dr. Burton has been persistent, methodical, and consistent since she began asserting her rights to be free from retaliation and discrimination in November of 2012. The university has discounted her, discredited her, and for the most part just ignored her. She may be a pest, but she's also right. Reasonable people already have construed the facts in her favor in a way that lends rise to an inference of pretextual and retaliatory behavior on the university's part. Ms. Penix, what's Dr. Burton's status at the university now? She's currently suspended and termination proceedings have been initiated. She's suspended and? Termination proceedings have been initiated, as I understand it. Do you want to save time for rebuttal? I would like that. Thank you, Your Honor. Mr. Kilpatrick. Thank you, Your Honors. May it please the court. My name is Stephen Kilpatrick with the Wisconsin Department of Justice, and I represent the Board of Regents of the University of Wisconsin System and three other defendants whose presence is questionable to me. While we're still in the case, I'll focus on the board since there are Title IX and Title VII cases or claims of retaliation brought against the Board of Regents. I have three main points to discuss today. First, in regard to Dr. Burton's Title IX retaliation claim, the board conceded that she had engaged in protected activity of assisting the student in her sexual harassment complaint. The district court properly concluded that she did not suffer a material adverse action and thus did not engage in any causation analysis with regard to this Title IX retaliation claim. As to Dr. Burton's Title VII retaliation claim, the board again conceded protected activity, conceded that she suffered a material adverse action, and the district court properly concluded that no reasonable jury could conclude that the material adverse actions she suffered were caused by the protected activity she engaged in. So the district court properly dismissed her Title VII retaliation claim and entered judgment in favor of the board. And I think really that's where, you know, as counsel points out, there were factual disputes about whether or not Troup filed the letter of direction with retaliatory intent. But certainly there was a letter of direction was filed, the complaint she then filed with the chancellor. But as the district court noted, there were allegations within those letters, the letters and the complaint, that Dr. Burton admitted happened. So that the district court properly stated there was a factual basis for Dean Troup to submit the letter of direction and to submit the complaint to the chancellor. As long as there is a factual basis and that there was a reasonable belief by Dean Troup that Dr. Burton had engaged in activities that she thought were inappropriate, then that is enough. But shouldn't we also look at the timing of this and that could undercut some of those statements that were there? Well, the timing, this court has held in the past that timing alone is not sufficient to result in a finding of causation. And as the opposing counsel points out, there was nothing in the record with regard to Dr. Burton submitting this intake questionnaire to the EEOC to those at the university. So there is no evidence that they were on notice of what was in that, what was it, an October letter? Correct. What's in the record, to my knowledge, is evidence that the EEOC received her intake questionnaire. And then later in December, she filed her formal charge. My second point here is that Dr. Burton is improperly attempting to expand the contours of this case on appeal after she specifically narrowed them before the district court. Specifically, she cannot now bring forth issues and arguments under both her Title IX and her Title VII retaliation claims that she engaged in more protected activities that she put forward to the district court, that she suffered more material adverse actions that she provided before the district court. She states that the district court erred, but she, through her counsel before the district court, didn't make specific arguments, didn't raise specific issues before the district court. There's no way the district court could have erred. What Dr. Burton is trying to do here is to relitigate her claim on appeal, which is something she certainly can't do. She has made her bed in the district court, and she must lie in it. So this argument she made in terms of her reply, which is to look at it through all this additional evidence that came in, was just to show that others might view it differently. You're not buying what she's selling on that. That's correct. What it seems to be here is that Dr. Burton is making an argument on appeal with new protected activities due, material adverse actions, making some type of a combination argument that her attorneys didn't make before the district court. So the district court never had a chance to analyze those arguments that she's making here. My third point is with regard to Dr. Burton's concerns about the district court not properly viewing the facts in light most favorable to her. I think the brief that the board filed properly addresses her concerns. But in summary, the complaints that she has and she's raised here today, they're really not material to the case. She talks about the court focusing on the note. The note doesn't have any impact into her Title IX retaliation case or into her Title VII retaliation case. I believe that what Dr. Burton is doing is simply, again, trying to argue and make her argument that this court needs to look at something that the district court never did. So with regard to Title IX, again, she's raising protected activities for the first time on appeal. She's, in her brief, raised a November 17th email to an HR human resources person. Didn't raise that before the district court. She talks about a grievance, a March 2013 grievance filed with the Complaints and Grievance Commission against Dr. Cawood. She never raised that before the district court, the first time on appeal. With regard to, again, Title IX material adverse actions, again, the district court did not find that there were any material adverse actions. No reasonable person could have been deterred from engaging in protected activities based on these actions. And those were Chair Cawood's creation of a policy to address student allegations against professors. He created that as a result of this incident with the student. And the perceived withdrawal of support by him and Dean for Burton's cyber crime initiative. Those were not material adverse actions as the district court held, and we ask that this court affirm. She also raises on appeal first time other material adverse actions. And again, I stated these combination arguments that were not raised before. With regard to her Title VII retaliation complaint, or her claim. Again, the protected activities, the filing of her equal rights division complaint dated August 13th, 2013. And the filing of her EEOC charge, which formally was done December 9th, 2014. The board has conceded those are protected activities under Title VII. Material adverse actions. Again, the board has conceded Dean Throop's letter of direction and subsequent complaint to the chancellor. But the district court was correct that there was no causation between those protected activities and the material adverse actions. And we ask that the Court of Appeals affirm on those same grounds too. So in conclusion, your honors, is that Dr. Burton was simply dissatisfied by the way her attorneys litigated her case before the district court. She cannot now, for the first time on appeal, bring forth more protected activities, more adverse actions, new causation arguments that weren't raised below. She is essentially retrying her case before the Court of Appeals, and that is not permitted. The district court's decision should be affirmed. What's his issue about her being terminated? That is not within the record of this case. Recently, there were, I believe, letters brought forth by administration at UW-Platteville to impose discipline on Dr. Burton. That's not in the record here. That's not a consequence of all of this? It is not. This is not alleged to have been. Yeah, I would expect that there may be another lawsuit with regard to that, but it's not under this lawsuit here. Thank you, your honors. Thank you, Mr. Kilpatrick. Ms. Pendix? Thank you, your honors. Appellants want to parse out between the alleged protected activities under Title VII and Title IX, but it's artificial because every time that Dr. Burton was complaining about the situations that were going on, she was complaining about both retaliation and discrimination. So a lot of the protected activities fall under both Title VII and IX, and that's something that could be worked out at the district court level if the case were remanded. But it's not dispositive of her arguments here. Appellants indicate one thing I wanted to point out is that retaliation prevents punishment for opposing unlawful behavior. So the protected activities is a legal construction in interpreting the statutes. And she was, Sabina Burton was undergoing like an ongoing course of protest to what she perceived to be systemic discrimination and retaliation against her personally, but went back to the note and kind of continued in response to her discrimination. So in terms of timing, though, I'm just looking at the record. It was in August. I mean, August 7th, she's removed as a formal mentor. Then it's August the 13th she files the discrimination charge and gets a right to sue letter from the Wisconsin Department of Workforce Development. The university got notice of that, right? Yes, that's correct. The timing alone might not establish a retaliatory animus, but combined with the questionable characterizations in the letter of direction, along with the ad hoc justification for taking away her mentorship position, it amounts to more than the mere scintilla of evidence that's the threshold for getting past summary judgment. The appellants are characterizing it as her wanting to relitigate the claim, but this court does review summary judgment de novo almost as if the motion was made directly to this court. Ms. Penix, just help me on the chronology here. Yes. Is it your view that what triggered what you view as hostile action by the university, the result of this note incident in October of 12? The note incident happened in October. The following month, and this is only in the record, not argued, Dr. Burton complained because the chair had initiated an investigation of her as it's framed in the lower court arguments and done some things that she perceived as retaliation. That was ignored. Then the December complaint. What exactly, what type of investigation? Well, after Human Resources had taken over with the note, he then sent her an email a week later wanting to know, well, when did you find out? Who did you report it to? And asking her questions. Ultimately, he was told to like desist with his investigation and just leave it alone because the administration was handling it. So that investigation in and of itself, you say, is a building block of discrimination? I'm just explaining to you in person terms how this ended up snowballing in the timeline. Yeah. The reason I ask is in January of, was it 13? Correct. A lot of favorable things happened to the doctor, right? She applies for tenure, and you unanimously granted that, right? January of 2013 was actually very hard on Dr. Burton because she had been working on the cybersecurity project for a year, at least a year if not more, and that was the month where Dr. Cawood and Dean Throop withdrew support and actually directed her, stop all your work on that project. But did Dr. Cawood and the others grant her tenure? Ultimately, yes. Dr. Cawood voted in favor, although he initially opposed it. And she was approved to teach extra courses? In one instance. For additional pay, and this is all after the note incident? Yes. Some things that can be construed as favorable are on the record and did happen to her. Well, granting tenure is about as favorable an action, I guess, in the academy as you can get, right? I'm pretty sure that Dr. Burton would tell you not if it's meaningless and the school doesn't have to follow its own procedure and federal law regarding retaliation and discrimination such as tenure. I just want to get the sequence here. Because you seem to think there's a seminal event that starts to trigger, that is the student incident and what seems to me to be a responsible action on her part by forwarding it to other authorities. I think that the note serves as a seminal event for all her claims of retaliation. That's kind of where it started when she started complaining. But in her early complaints – Well, she wasn't complaining. Wasn't she just referencing what she thought was inappropriate behavior that had been brought to her attention? At the note incident, yes. Yeah, and she brought that to the administration. They had some sort of inquiry, which I guess would be natural in that setting. And in January, she's granted tenure? It was March that she was granted tenure. And in January – Well, whatever. I mean, so tell me between August and the granting of tenure, what are the incidents that indicate the discriminatory conduct by the university? Well, Dr. Burton dismissed her claims of discrimination, or her counsel did, in the course of the summary judgment proceedings. Does that matter? Well, I'm just trying to track where we are on this. Yeah, so it's October 12th that this harass note happens. Yes. Okay, Burton emails the dean of students. K. Wood stops being collegial. Okay, between mid-October, K. Wood sends a memo because K. Wood has expressed he's a little unhappy with the process, so he develops a procedure for complaints. The fall of 2012, she gets the AT&T grant, the cyber grant. December of 2012, Burton emails the dean, saying that K. Wood has been discriminatory against women in retaliation for reporting the Gibson note. Then the next month, this is what Judge Flom is talking about, January 20th, she gets tenure. I mean, January 2013. Then January 24th, there's a negative response to the grant draft, right? And then March of 2013, she files the grievance against K. Wood for retaliation. And then K. Wood is removed as department chair, right, in July. And then in April, Gibson's note is deemed extremely poor judgment. And then it's August 7th that she's removed as a former mentor in the program, right? And then she files the state discrimination, Wisconsin State. And then in April, files the civil action in the district court. Does that help? Because that's what I'm trying to focus on, too, when it is. What is the thing that triggers the retaliation? Because this note, I mean, the LOC, this letter of direction, you agree with your opposing counsel that the university did not get a copy of that initial charge? I absolutely do not agree with that. I agree the record is undeveloped on that point. Well, if the record is undeveloped, it's not there. That's correct. Okay, so it's not there. So that's the only thing you can work with, the record. And so the record doesn't show the university got notice. So that's a little problematic if you're relying on that as what triggered the retaliation. But Dr. Burton had made many complaints along the way, especially in that month before the letter of direction came out. She had complained directly to the chancellor that her grievance wasn't being heard. And that's referenced in the letter of direction. So internal within the letter of direction, that's what you're relying on, the fact that she had complained, and it had just been cumulative complaints that triggered the retaliation. Well, and that's what I meant when I was saying that to call them protected activities and to parse them into individual actions was a legal construction that isn't necessarily consistent with reality, because the statute says you can't get retaliated against for opposing unlawful practices. And she was engaging in a course of opposing unlawful practices. So there were several complaints pending when the letter of direction was issued that the university was just not responding to, and those complaints were for discrimination and retaliation. I guess we'll have to ask you to conclude your argument. Okay. Accordingly, Dr. Burton requests respectfully that this court vacate the order granting the university's motion for summary judgment and remand the case to the district court so that Burton might present it to a jury. Thank you, Your Honors. Thank you, Ms. Benick. Thank you, Mr. Kilpatrick. The case is taken under advisement.